IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 19-509

| | |
|---|---|
| SYNGENTA CROP PROTECTION, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ATTICUS, LLC,<br><br>Defendant. | **COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Syngenta Crop Protection, LLC ("Syngenta") for its Complaint against Atticus, LLC ("Atticus"), hereby demands a jury trial and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., and such other relief as this Court deems just and proper. Briefly, as set forth below, Syngenta first developed and commercialized azoxystrobin, a breakthrough agricultural fungicide, as well as commercially viable methods of making azoxystrobin, which are protected by Syngenta's patents, including U.S. Patent Nos. 8,124,761 and 8,552,185 (collectively, "the Patents-in-Suit"). Atticus has infringed, and continues to infringe, Syngenta's patent rights by at least importing, using, selling, and offering to sell azoxystrobin products in the United States, including Atticus' ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL products, that are made using Syngenta's patented methods. Syngenta seeks damages adequate to compensate it for this infringement and a permanent injunction against Atticus to bar future infringement.

## PARTIES

2. Syngenta Crop Protection, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 410 South Swing Road, Greensboro, North Carolina 27409-2012. Syngenta is a world-leading agribusiness involved in the research, development, manufacture, and sale of fungicides, herbicides, insecticides, and other crop protection products.

3. On information and belief, Atticus, LLC is a limited liability company organized and existing under the laws of the State of North Carolina, with its principal place of business at 5000 CentreGreen Way, Suite 100 Cary, NC 27513.

## JURISDICTION AND VENUE

4. This Court has exclusive subject matter jurisdiction over Syngenta's claims of patent infringement pursuant to federal question jurisdiction, 28 U.S.C. §§ 1331, 1338(a), and the patent laws of the United States, 35 U.S.C. § 1 et seq.

5. This Court has personal jurisdiction over Atticus, because Atticus is incorporated in the State of North Carolina, and Atticus further resides and maintains a principal place of business in the State of North Carolina. Atticus has also committed acts that infringe Syngenta's Patents-in-Suit in the State of North Carolina. Further, Atticus has systematic and continuous contacts with, regularly transacts business in, and regularly avails itself of the benefits of the State of North Carolina.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400 because Atticus resides in this judicial district, and further maintains a regular and established place of business in this judicial district, including at 5000 CentreGreen Way, Suite 100 Cary, NC 27513. Atticus also has committed acts of patent infringement in this judicial district.

7. Attached as Exhibit 1 to this Complaint are true and correct copies of pages from Atticus' website.[1]

8. On its "Contact Us" webpage, Atticus directs its customers to Atticus' address at "5000 CentreGreen Way, Suite 100 Cary, NC 27513" and provides a North Carolina phone number. (Ex. 1 at 3.)

9. Through its website, and its facility located in Cary, North Carolina, Atticus offers to sell, and sells, a range of agricultural products, including end-use azoxystrobin products: ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL. (Ex. 1 at 4-8.)

10. Atticus represents on its website that it has registered at least its ACADIA 2 SC, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL products in the State of North Carolina. (Ex. 1 at 9-10, 13, 15, 17.)

11. On information and belief, Atticus has also registered its ACADIA ESQ product in the State of North Carolina.

12. Attached hereto as Exhibits 2-6 are true and correct excerpted copies of Atticus' product labels for ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL, respectively. The product labels state that ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL are "Manufactured for: Atticus, LLC" and list the address of Atticus' facility in Cary, North Carolina: "5000 CentreGreen Way, Suite 100 Cary, NC 27513."

13. On information and belief, Atticus' employees at the facility in Cary, North Carolina direct or arrange for the manufacture of "azoxystrobin technical," a relatively pure form of azoxystrobin that is used as an active ingredient to formulate end-use azoxystrobin products.

---

[1] For ease of reference, page numbers have been added in the lower margin. Atticus' website is available at http://www.atticusllc.com (last accessed November 8, 2019).

14. On information and belief, Atticus' employees at the facility in Cary, North Carolina direct or arrange for the importation of azoxystrobin technical into the United States.

15. On information and belief, Atticus' employees at the facility in Cary, North Carolina direct or arrange for such imported azoxystrobin technical to be used to formulate Atticus' end-use azoxystrobin products, including ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL.

**BACKGROUND**

**Syngenta's Patents-in-Suit**

16. Beginning in the 1980s, Syngenta and its predecessors have spent significant resources researching and ultimately developing azoxystrobin, a break-through fungicidal chemical, which effectively controls fungal growth and enhances the yield of a variety of plants, including cereals such as wheat and barley as well as vines, fruits, vegetables, bananas, rice, soybeans, corn, turf, and ornamentals. Since the first commercially introducing azoxystrobin in 1997, Syngenta and its predecessors have manufactured, marketed, and sold end-use azoxystrobin products under a number of trade names, including ABOUND®, HERITAGE®, QUILT®, QUILT XCEL®, QUADRIS®, and HEADWAY® (among others). These products have been widely adopted and successful. Syngenta further supplies azoxystrobin technical to third-party manufacturers and distributors across the world.

17. In addition to developing and commercializing azoxystrobin, Syngenta has developed processes that make manufacturing azoxystrobin commercially viable. To protect its intellectual property in these processes, Syngenta has applied for and obtained patents, including, for example, U.S. Patent Nos. 8,124,761 and 8,552,185.

18. U.S. Patent No. 8,124,761 ("the '761 Patent"), entitled "Process for the Preparation of Azoxystrobin Using DABCO as a Catalyst and Novel Intermediates Used in the Process," was

duly and legally issued by the U.S. Patent and Trademark Office ("USPTO") on February 28, 2012. A true and correct copy of the '761 Patent is attached to this Complaint as Exhibit 7. The '761 Patent is currently assigned to Syngenta Crop Protection, LLC.

19. U.S. Patent No. 8,552,185 ("the '185 Patent"), entitled "Preparation of Azoxystrobin," was duly and legally issued by the USPTO on October 8, 2013. A true and correct copy of the '185 Patent is attached to this Complaint as Exhibit 8. The '185 Patent is currently assigned to Syngenta Crop Protection, LLC.

20. Both the '761 and '185 Patents are directed to the use of 1,4-diazabicyclo[2.2.2] octane ("DABCO") as a catalyst in the manufacture of azoxystrobin. The use of DABCO facilitates the commercial-scale manufacture of azoxystrobin by allowing the synthesis to take place faster and at lower temperatures, while reducing impurities and increasing product yield.

21. Based on Syngenta's experience, the benefits conferred by the use of DABCO as a catalyst are important for a manufacturer to stay competitive in the current market landscape, especially a generic manufacturer whose business model is to undercut its competition by selling at lower prices.

**<u>Atticus' Infringing Activities</u>**

22. As of the filing of this Complaint, and over the previous two growing seasons dating back to 2017, Atticus has been the largest importer of azoxystrobin into the United States, outside of Syngenta and its partners and affiliates.

23. During the 2017-2018 growing season, Atticus imported approximately 251,000 kilograms of azoxystrobin technical, representing approximately 44% of imports of azoxystrobin technical by generic manufacturers.

24. During the 2018-2019 growing season, Atticus imported approximately 266,000 kilograms of azoxystrobin technical, representing approximately 46% of all imports of azoxystrobin technical by generic manufacturers.

25. Upon importing this azoxystrobin technical into the United States, Atticus has used and continues to use it, or has caused and continues to cause it to be used, to formulate Atticus' end-use azoxystrobin products, including ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL.

26. Attached as Exhibit 9 is a true and correct copy of Atticus' product information sheet for ACADIA 2 SC.

27. As set forth Atticus' product information sheet, product webpage, and product label, ACADIA 2 SC contains approximately 22.9% azoxystrobin as an active ingredient. (Ex. 1 at 9-10; Ex. 2; Ex. 9 at 1.)

28. Attached as Exhibit 10 is a true and correct copy of Atticus' product information sheet for ACADIA ESQ.

29. As set forth Atticus' product information sheet, product webpage, and product label ACADIA ESQ contains approximately 18.2% azoxystrobin as an active ingredient. (Ex. 1 at 11-12; Ex. 3; Ex. 10 at 1.)

30. Attached as Exhibit 11 is a true and correct copy of Atticus' product information sheet for AQUILA XL.

31. As set forth Atticus' product information sheet product webpage, and product label AQUILA XL contains approximately 13.5% azoxystrobin as an active ingredient. (Ex. 1 at 13-14; Ex. 4; Ex. 11 at 1.)

32. Attached as Exhibit 12 is a true and correct copy of Atticus' product information sheet for ARTAVIA 2 SC.

33. As set forth Atticus' product information sheet, product webpage, and product label, ARTAVIA 2 SC contains approximately 22.9% azoxystrobin as an active ingredient. (Ex. 1 at 15; Ex. 5; Ex. 12 at 1.)

34. Attached as Exhibit 13 is a true and correct copy of Atticus' product information sheet for ARTAVIA XCEL.

35. As set forth Atticus' product information sheet, product webpage, and product label ARTAVIA XCEL contains approximately 5.73% azoxystrobin as an active ingredient. (Ex. 1 at 17; Ex. 6; Ex. 13 at 1.)

36. As Atticus explains on its website, its products' "chemistry isn't unique." (Ex. 1 at 1.)

37. The azoxystrobin technical that Atticus imports and/or uses to manufacture Atticus' end-use azoxystrobin products is made using the processes set forth in at least claim 1 of Syngenta's '761 Patent and at least claim 1 of Syngenta's '185 Patent.

38. Atticus' azoxystrobin technical is made by reacting a compound of formula (II), as defined in the '761 and '185 Patents, with 2-cyanophenol. This reaction is sometimes referred to colloquially as the "condensation" reaction.

39. The condensation reaction used to manufacture Atticus' azoxystrobin technical is catalyzed using DABCO.

40. Among other things, the use of DABCO is confirmed by the presence of one or more impurities in Atticus' end-use products that are indicative of the use of DABCO to catalyze the condensation reaction by which Atticus' azoxystrobin technical is made.

41. On information and belief, Atticus's azoxystrobin technical is manufactured using DABCO at levels between 0.1 and 40 mol %, and more specifically between 0.1 and 2 mol %.

42. On information and belief, Atticus's azoxystrobin technical is manufactured by mixing DABCO in the presence of 2-cyanophenol.

43. Atticus offers for sale, and sells, its end-use ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL products in this judicial district and elsewhere in the United States.

44. On information and belief, Atticus also offers for sale, and sells, unformulated azoxystrobin technical in this judicial district and elsewhere in the United States.

45. Atticus' azoxystrobin products, including its azoxystrobin technical and end-use ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL products, compete directly against Syngenta's azoxystrobin products.

46. Atticus markets its end-use ACADIA 2 SC, ACADIA ESQ, and AQUILA XL products as substitutes for Syngenta's azoxystrobin products.

47. Atticus represents to customers that ACADIA 2 SC is "[c]ompar[able] to" Syngenta's QUADRIS® and ABOUND® products and that it includes the same active ingredients as those products. (Ex. 1 at 4; Ex. 9 at 1.)

48. Atticus represents to customers that ACADIA ESQ is "[c]ompar[able] to" Syngenta's QUADRIS TOP® and QUADRIS TOP® SB products and that it includes the same active ingredients as those products. (Ex. 1 at 4; Ex. 10 at 1.)

49. Atticus represents to customers that AQUILA XL is "[c]ompar[able]" Syngenta's QUILT XCEL® product and that it includes the same active ingredients as that product. (Ex. 1 at 4; Ex. 11 at 1.)

50. Atticus represents to customers that ARTAVIA 2 SC is "[c]ompar[able] to" Syngenta's HERITAGE® product and that it includes the same active ingredients as that product. (Ex. 1 at 4; Ex. 12 at 1.)

51. Atticus represents to customers that ARTAVIA XCEL is "[c]ompar[able] to" Syngenta's HEADWAY® product and that it includes the same active ingredients as that product. (Ex. 1 at 4; Ex. 13 at 1.)

52. Customers have purchased Atticus' azoxystrobin products, including ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL, instead of Syngenta's azoxystrobin products.

53. As a generic manufacturer, Atticus offers its azoxystrobin products, including ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL, at lower prices than Syngenta's azoxystrobin products.

54. Atticus' sales and offers for sale of azoxystrobin products have eroded, and continue to erode, the prices of Syngenta's azoxystrobin products.

55. Syngenta's reputation is also harmed when customers choose Atticus' products, believing them to be comparable to Syngenta's azoxystrobin products.

56. Atticus' activities have irreparably harmed, and continue to irreparably harm, Syngenta's business.

57. On June 11, 2019, Syngenta sent a letter to Randy Canady, Founder and Chief Executive Officer of Atticus. A true and correct copy of that letter is attached as Exhibit 14.

58. In its June 11, 2019 letter, Syngenta notified Atticus of the '761 Patent and explained that "[i]f the azoxystrobin technical used to formulate [Atticus'] azoxystrobin end-use products was made by a process that uses the DABCO catalyst during the condensation reaction 'in the

presence of between 0.1 and 2 mol %,' such conduct would constitute an infringement of one or more claims of the '761 Patent." (Ex. 14.)

59. To the extent that Atticus contended that it was using a noninfringing process, Syngenta requested (among other things) that Atticus identify under a confidentiality agreement its supplier of azoxystrobin technical and the related manufacturing specifications and explain how its process does not infringe. (Ex. 14.)

60. On June 21, 2019, Syngenta's counsel emailed Atticus' counsel, further notifying Atticus of the '185 Patent and providing a confidentiality agreement by which the parties could exchange the information requested. A true and correct copy of the email is attached to this Complaint as Exhibit 15.

61. Since then, despite negotiations between the parties on the confidentiality agreement, Syngenta has been unable to obtain the information it requested from Atticus on reasonable terms.

62. Atticus has been aware of Syngenta's '761 Patent since at least as early as June 11, 2019.

63. Atticus has been aware of Syngenta's '185 Patent since at least as early as June 21, 2019.

64. On information and belief, Atticus was aware of Syngenta's '761 and '185 Patents well before June 2019.

65. On March 27, 2015, Syngenta asserted the '761 Patent (among other patents) against certain generic manufacturers, including Willowood USA, LLC and related entities, in the U.S. District Court for the Middle District of North Carolina: *Syngenta Crop Protection, LLC v. Willowood USA, LLC et al.*, Case No. 1:15-cv-274 (Eagles, J.) ("Willowood Litigation").

66. On September 13, 2017, a jury in the Willowood Litigation entered a verdict finding that the ’761 Patent was valid and infringed.

67. On September 18, 2017, Syngenta issued a press release providing notice that a jury in the Willowood Litigation had found the ’761 Patent valid and infringed. A true and correct copy of the press release is attached to this Complaint as Exhibit 16.

68. The outcome of the Willowood Litigation was further publicized in industry publications. As an example, on September 18, 2017, AGDaily reported:

> A jury granted a major victory to Syngenta Crop Protection LLC and its customers Thursday after finding that Willowood infringed a patent relating to the manufacture of the fungicide azoxystrobin (U.S. Patent 8,124,761). The jury found that patent to be valid, and awarded Syngenta damages for Willowood’s infringement. The patent remains in effect until 2029 and has counterparts around the world.

A true and correct copy of the AGDaily article is attached to this Complaint as Exhibit 17.

69. The district court in the Willowood litigation ultimately entered judgment and issued a permanent injunction against Willowood to bar infringement of the ’761 Patent.

70. Willowood did not appeal the judgment or the permanent injunction entered against it relating to the ’761 Patent.

71. When Syngenta appealed certain other rulings from the Willowood Litigation to the Federal Circuit Court of Appeals, Atticus and other generic manufacturers submitted an amicus brief in support of Willowood. A true and correct copy of the certificate of interest filed by Atticus and the other generic manufacturers is attached to this Complaint as Exhibit 18.

72. Atticus was, thus, aware of and following the Willowood Litigation.

73. On information and belief, Atticus was (1) aware of the existence ’761 Patent; (2) aware that a jury in the Willowood Litigation had found the ’761 Patent to be valid and infringed; (3) aware that the district court entered judgment and issued a permanent injunction against

Willowood, another generic manufacturer, to bar infringement of the ’761 Patent; and (4) aware that the judgment and permanent injunction entered against Willowood were not appealed.

**COUNT I**

**(Infringement of U.S. Patent No. 8,124,761)**

74. Syngenta incorporates by reference the allegations in paragraphs 1 through 73.

75. An actual and justiciable controversy exists between Syngenta and Atticus concerning Atticus’ infringement of Syngenta’s ’761 Patent.

76. Atticus infringes, and has infringed, at least claim 1 of the ’761 Patent under at least 35 U.S.C. § 271(g) by importing into the United States, and further using, offering to sell, and selling, azoxystrobin products, including azoxystrobin technical, ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL, that were made using Syngenta’s patented process.

77. Syngenta has been damaged by Atticus’ infringement of the ’761 Patent in an amount to be determined at trial.

78. Syngenta has suffered irreparable injury for which there is no adequate remedy at law, and will continue to suffer such irreparable injury, unless Atticus’ infringement of the ’761 Patent is enjoined by this Court.

79. On information and belief, Atticus’ infringement of the ’761 Patent has been, and continues to be, willful.

**COUNT II**

**(Infringement of U.S. Patent No. 8,552,185)**

80. Syngenta incorporates by reference the allegations in paragraphs 1 through 79.

81. An actual and justiciable controversy exists between Syngenta and Atticus concerning Atticus’ infringement of Syngenta’s ’185 Patent.

82. Atticus infringes, and has infringed, at least claim 1 of the ’185 Patent under at least 35 U.S.C. § 271(g) by importing into the United States, and further using, offering to sell, and selling, azoxystrobin products, including azoxystrobin technical, ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL, that were made using Syngenta’s patented process.

83. Syngenta has been damaged by Atticus’ infringement of the ’185 Patent in an amount to be determined at trial.

84. Syngenta has suffered irreparable injury for which there is no adequate remedy at law, and will continue to suffer such irreparable injury, unless Atticus’ infringement of the ’185 Patent is enjoined by this Court.

85. On information and belief, Atticus’ infringement of the ’185 Patent has been, and continues to be, willful.

## JURY DEMANDED

86. Pursuant to Federal Rule of Civil Procedure 38(b), Syngenta hereby respectfully requests a jury trial on all issues and claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Syngenta prays for the following judgments and relief against Atticus:

A. A judgment that Atticus has infringed the Patents-in-Suit;

B. A permanent injunction against Atticus and its affiliates, subsidiaries, assigns, employees, agents, or anyone acting in privity or concert with Atticus, from infringing the Patents-in-Suit;

C. An award of all damages adequate to compensate Syngenta for Atticus' patent infringement, such damages to be determined by a jury, and an accounting to adequately compensate Syngenta for the infringement;

D. An award of treble damages as a result of Atticus' willful infringement of the Patents-in-Suit;

E. An award of pre-judgment and post-judgment interest at the maximum rate allowed by law;

F. An award of Syngenta's costs as the prevailing party;

G. An order finding that this is an exceptional case and awarding Syngenta its reasonable attorneys' fees related to Atticus' patent infringement under 35 U.S.C. § 285 and all other applicable statutes, rules and common law; and

H. Such other further relief, in law or in equity, as this Court deems just.

**Dated:** November 12, 2019

By: /s/ Clay C. Wheeler

Clay C. Wheeler (N.C. Bar. No. 38713)
Kilpatrick Townsend & Stockton LLP
4208 Six Forks Road
Suite 1400
Raleigh, North Carolina 27609
Telephone: (919) 420-1717
Facsimile: (919) 420-1800
cwheeler@kilpatricktownsend.com

*Local Rule 83.1(d) Counsel for Plaintiff Syngenta Crop Protection, LLC*

OF COUNSEL:
Russell E. Levine, P.C. (IL Bar. No. 6193834)
Hari Santhanam (IL Bar. No. 6296508)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
russell.levine@kirkland.com
hari.santhanam@kirkland.com

*Attorneys for Plaintiff Syngenta Crop Protection, LLC*