IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-00509-D

| | | |
|---|---|---|
| SYNGENTA CROP PROTECTION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ATTICUS, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **ATTICUS'S ANSWER AND COUNTERCLAIMS**<br><br>**(<u>REDACTED</u>)** |

Defendant Atticus, LLC ("Atticus"), hereby provides the following Answer and Counterclaims to Plaintiff Syngenta Crop Protection, LLC's ("Syngenta") Complaint for patent infringement. To the extent not expressly admitted below, Atticus denies the specific allegations of the Complaint.

## NATURE OF THE ACTION

1. This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and such other relief as this Court deems just and proper. Briefly, as set forth below, Syngenta first developed and commercialized azoxystrobin, a breakthrough agricultural fungicide, as well as commercially viable methods of making azoxystrobin, which are protected by Syngenta's patents, including U.S. Patent Nos. 8,124,761 and 8,552,185 (collectively, "the Patents-in-Suit"). Atticus has infringed, and continues to infringe, Syngenta's patent rights by at least importing, using, selling, and offering to sell azoxystrobin products in the United States, including Atticus' ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL products, that are made using Syngenta's patented methods. Syngenta seeks damages adequate to compensate it for this infringement and a permanent injunction against Atticus to bar future infringement.

ANSWER: The first sentence of Paragraph 1 contains a legal conclusion to which no response is required. Atticus lacks sufficient information to admit or deny the allegations in the second sentence of Paragraph 1, and, on that basis, Atticus denies those allegations. Attics denies all the remaining allegations of Paragraph 1 and denies that Syngenta is entitled to any damages or injunctive relief.

## PARTIES

2. Syngenta Crop Protection, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 410 South Swing Road, Greensboro, North Carolina 27409-2012. Syngenta is a world-leading agribusiness involved in the research, development, manufacture, and sale of fungicides, herbicides, insecticides, and other crop protection products.

ANSWER: This Paragraph consists of allegations that Atticus lacks sufficient information to admit or deny, and on that basis, Atticus denies the allegations of this Paragraph.

3. On information and belief, Atticus, LLC is a limited liability company organized and existing under the laws of the State of North Carolina, with its principal place of business at 5000 CentreGreen Way, Suite 100 Cary, NC 27513.

ANSWER: Admitted.

## JURISDICTION AND VENUE

4. This Court has exclusive subject matter jurisdiction over Syngenta's claims of patent infringement pursuant to federal question jurisdiction, 28 U.S.C. §§ 1331, 1338(a), and the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

ANSWER: This Paragraph contains a legal conclusion to which no response is required.

5. This Court has personal jurisdiction over Atticus, because Atticus is incorporated in the State of North Carolina, and Atticus further resides and maintains a principal place of business in the State of North Carolina. Atticus has also committed acts that infringe Syngenta's Patents-in-Suit in the State of North Carolina. Further, Atticus has systematic and continuous contacts with, regularly transacts business in, and regularly avails itself of the benefits of the State of North Carolina.

ANSWER: This Paragraph contains a legal conclusion to which no response is required. Atticus admits it is incorporated in the State of North Carolina and that it maintains a principal place of business in the State of North Carolina. Atticus admits it transacts business in the State of North Carolina. Atticus denies all the remaining allegations of Paragraph 5.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400 because Atticus resides in this judicial district, and further maintains a regular and established place of business in this judicial district, including at 5000 CentreGreen Way, Suite 100 Cary, NC 27513. Atticus also has committed acts of patent infringement in this judicial district.

ANSWER: This Paragraph contains a legal conclusion to which no response is required. Atticus admits it maintains a regular and established place of business in this judicial district, including at 5000 CentreGreen Way, Suite 100 Cary, NC 27513. Atticus denies all the remaining allegations of Paragraph 6.

7. Attached as Exhibit 1 to this Complaint are true and correct copies of pages from Atticus' website.[1]

[1] For ease of reference, page numbers have been added in the lower margin. Atticus' website is available at http://www.atticusllc.com (last accessed November 8, 2019).

ANSWER: Atticus admits that Exhibit 1 appears to be copies of pages from Atticus's website on November 8, 2019.

8. On its "Contact Us" webpage, Atticus directs its customers to Atticus' address at "5000 CentreGreen Way, Suite 100 Cary, NC 27513" and provides a North Carolina phone number. (Ex. 1 at 3.)

ANSWER: Admitted.

9. Through its website, and its facility located in Cary, North Carolina, Atticus offers to sell, and sells, a range of agricultural products, including end-use azoxystrobin products: ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL. (Ex. 1 at 4-8.)

ANSWER: Atticus admits that it offers to sell and sells ACADIA 2 SC, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL. Atticus denies the remaining allegations of Paragraph 9.

10. Atticus represents on its website that it has registered at least its ACADIA 2 SC, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL products in the State of North Carolina. (Ex. 1 at 9-10, 13, 15, 17.)

ANSWER: Admitted.

11. On information and belief, Atticus has also registered its ACADIA ESQ product in the State of North Carolina.

ANSWER: Admitted.

12. Attached hereto as Exhibits 2-6 are true and correct excerpted copies of Atticus' product labels for ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL, respectively. The product labels state that ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL are "Manufactured for: Atticus, LLC" and list the address of Atticus' facility in Cary, North Carolina: "5000 CentreGreen Way, Suite 100 Cary, NC 27513."

ANSWER: Atticus admits that Exhibits 2-6 are excerpted copies of Atticus's product labels for the products identified in Paragraph 12 and that, for each identified product, the excerpted label states "Manufactured for: Atticus, LLC" and lists the address of Atticus's facility in Cary, North Carolina as "5000 CentreGreen Way, Suite 100 Cary, NC 27513."

13. On information and belief, Atticus' employees at the facility in Cary, North Carolina direct or arrange for the manufacture of "azoxystrobin technical," a relatively pure form of azoxystrobin that is used as an active ingredient to formulate end-use azoxystrobin products.

ANSWER: Atticus admits that it purchases azoxystrobin technical from third parties for its azoxystrobin products. Atticus denies the remaining allegations of Paragraph 13.

14. On information and belief, Atticus' employees at the facility in Cary, North Carolina direct or arrange for the importation of azoxystrobin technical into the United States.

ANSWER: Atticus admits that it has imported azoxystrobin technical from third parties for its azoxystrobin products. Atticus denies the remaining allegations of Paragraph 14.

15. On information and belief, Atticus' employees at the facility in Cary, North Carolina direct or arrange for such imported azoxystrobin technical to be used to formulate Atticus' end-use azoxystrobin products, including ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL.

ANSWER: Admitted.

## BACKGROUND
## Syngenta's Patents-in-Suit

16. Beginning in the 1980s, Syngenta and its predecessors have spent significant resources researching and ultimately developing azoxystrobin, a break-through fungicidal chemical, which effectively controls fungal growth and enhances the yield of a variety of plants, including cereals such as wheat and barley as well as vines, fruits, vegetables, bananas, rice, soybeans, corn, turf, and ornamentals. Since the first commercially introducing azoxystrobin in 1997, Syngenta and its predecessors have manufactured, marketed, and sold end-use azoxystrobin products under a number of trade names, including ABOUND®, HERITAGE®, QUILT®, QUILT XCEL®, QUADRIS®, and HEADWAY® (among others). These products have been widely adopted and successful. Syngenta further supplies azoxystrobin technical to third-party manufacturers and distributors across the world.

ANSWER: The allegations of this Paragraph contain allegations about which Atticus lacks sufficient information to admit or deny, and on that basis, Atticus denies the allegations of this Paragraph.

17. In addition to developing and commercializing azoxystrobin, Syngenta has developed processes that make manufacturing azoxystrobin commercially viable. To protect its intellectual property in these processes, Syngenta has applied for and obtained patents, including, for example, U.S. Patent Nos. 8,124,761 and 8,552,185.

ANSWER: Atticus admits that the United States Patent Office ("USPTO") records list Syngenta as the current assignee of U.S. Patent Nos. 8,124,761("the '761 patent) and 8,552,185 ("the '185 patent"). The remaining allegations of this Paragraph contain allegations about which Atticus lacks sufficient information to admit or deny, and on that basis, Atticus denies the remaining allegations of this Paragraph.

18. U.S. Patent No. 8,124,761 ("the '761 Patent"), entitled "Process for the Preparation of Azoxystrobin Using DABCO as a Catalyst and Novel Intermediates Used in the Process," was duly and legally issued by the U.S. Patent and Trademark Office ("USPTO") on February 28, 2012. A true and correct copy of the '761 Patent is attached

to this Complaint as Exhibit 7. The ’761 Patent is currently assigned to Syngenta Crop Protection, LLC.

ANSWER: Atticus admits that a copy of the ’761 patent was attached to the Complaint as Exhibit 7. Atticus admits that the ’761 patent bears an issuance date of February 28, 2012 and is titled “Process for the Preparation of Azoxystrobin Using DABCO as a Catalyst and Novel Intermediates Used in the Process.” Atticus also admits that the USPTO assignment databases identifies Syngenta as the current assignee of the ’761 patent. Atticus denies the remaining allegations of this Paragraph.

19. U.S. Patent No. 8,552,185 (“the ’185 Patent”), entitled “Preparation of Azoxystrobin,” was duly and legally issued by the USPTO on October 8, 2013. A true and correct copy of the ’185 Patent is attached to this Complaint as Exhibit 8. The ’185 Patent is currently assigned to Syngenta Crop Protection, LLC.

ANSWER: Atticus admits that the ’185 patent was attached to the Complaint as Exhibit 8. Atticus admits that the ’185 patent bears an issuance date of October 8, 2013 and a title of “Preparation of Azoxystrobin.” Atticus also admits that the USPTO assignment database identifies Syngenta as the current assignee of the ’185 patent. Atticus denies the remaining allegations of this Paragraph.

20. Both the ’761 and ’185 Patents are directed to the use of 1,4-diazabicyclo[2.2.2] octane (“DABCO”) as a catalyst in the manufacture of azoxystrobin. The use of DABCO facilitates the commercial-scale manufacture of azoxystrobin by allowing the synthesis to take place faster and at lower temperatures, while reducing impurities and increasing product yield.

ANSWER: Atticus admits that the ’761 and ’185 patents disclose and claim, *inter alia*, the use of 1,4-diazabicyclo[2.2.2] octane (“DABCO”) only as a catalyst in the manufacture of azoxystrobin. Atticus denies the remaining allegations of this Paragraph.

21. Based on Syngenta's experience, the benefits conferred by the use of DABCO as a catalyst are important for a manufacturer to stay competitive in the current market landscape, especially a generic manufacturer whose business model is to undercut its competition by selling at lower prices.

ANSWER: All the allegations of this Paragraph are "based on Syngenta's experience." Atticus lacks sufficient information to admit or deny the allegations "based on Syngenta's experience," and on that basis, Atticus denies the remaining allegations of this Paragraph.

**Atticus's [Alleged] Infringing Activities**

22. As of the filing of this Complaint, and over the previous two growing seasons dating back to 2017, Atticus has been the largest importer of azoxystrobin into the United States, outside of Syngenta and its partners and affiliates.

ANSWER: Denied.

23. During the 2017-2018 growing season, Atticus imported approximately 251,000 kilograms of azoxystrobin technical, representing approximately 44% of imports of azoxystrobin technical by generic manufacturers.

ANSWER: Atticus admits it imported azoxystrobin technical during the 2017-2018 growing season. The remaining allegations of this Paragraph are denied.

24. During the 2018-2019 growing season, Atticus imported approximately 266,000 kilograms of azoxystrobin technical, representing approximately 46% of all imports of azoxystrobin technical by generic manufacturers.

ANSWER: Atticus admits it imported azoxystrobin technical during the 2018-2019 growing season. The remaining allegations of this Paragraph are denied.

25. Upon importing this azoxystrobin technical into the United States, Atticus has used and continues to use it, or has caused and continues to cause it to be used, to formulate Atticus' end-use azoxystrobin products, including ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL.

ANSWER: Atticus admits that the azoxystrobin technical it has imported into the United States has, and is, being used to formulate certain azoxystrobin end-products.

26. Attached as Exhibit 9 is a true and correct copy of Atticus' product information sheet for ACADIA 2 SC.

ANSWER: Admitted.

27. As set forth [in] Atticus' product information sheet, product webpage, and product label, ACADIA 2 SC contains approximately 22.9% azoxystrobin as an active ingredient. (Ex. 1 at 9¬10; Ex. 2; Ex. 9 at 1.)

ANSWER: Admitted.

28. Attached as Exhibit 10 is a true and correct copy of Atticus' product information sheet for ACADIA ESQ.

ANSWER: Admitted.

29. As set forth Atticus' product information sheet, product webpage, and product label ACADIA ESQ contains approximately 18.2% azoxystrobin as an active ingredient. (Ex. 1 at 11-12; Ex. 3; Ex. 10 at 1.)

ANSWER: Admitted.

30. Attached as Exhibit 11 is a true and correct copy of Atticus' product information sheet for AQUILA XL.

ANSWER: Admitted.

31. As set forth Atticus' product information sheet product webpage, and product label AQUILA XL contains approximately 13.5% azoxystrobin as an active ingredient. (Ex. 1 at 13¬14; Ex. 4; Ex. 11 at 1.)

ANSWER: Admitted.

32. Attached as Exhibit 12 is a true and correct copy of Atticus' product information sheet for ARTAVIA 2 SC.

ANSWER: Admitted.

33. As set forth Atticus' product information sheet, product webpage, and product label, ARTAVIA 2 SC contains approximately 22.9% azoxystrobin as an active ingredient. (Ex. 1 at 15; Ex. 5; Ex. 12 at 1.)

ANSWER: Admitted.

34. Attached as Exhibit 13 is a true and correct copy of Atticus' product information sheet for ARTAVIA XCEL.

ANSWER: Admitted.

35. As set forth Atticus' product information sheet, product webpage, and product label ARTAVIA XCEL contains approximately 5.73% azoxystrobin as an active ingredient. (Ex. 1 at 17; Ex. 6; Ex. 13 at 1.)

ANSWER: Admitted.

36. As Atticus explains on its website, its products' "chemistry isn't unique." (Ex. 1 at 1.)

ANSWER: Atticus admits that its website states: "Atticus offers a broad and growing portfolio of branded-generic fungicides, herbicides and insecticides. While the chemistry isn't unique, the Atticus experience is. Delivering products that are relevant to

your operation, and doing so at the right value, is how we ensure you win the crop protection battle." The remaining allegations of this Paragraph are denied.

37. The azoxystrobin technical that Atticus imports and/or uses to manufacture Atticus' end-use azoxystrobin products is made using the processes set forth in at least claim 1 of Syngenta's '761 Patent and at least claim 1 of Syngenta's '185 Patent.

ANSWER: Denied.

38. Atticus' azoxystrobin technical is made by reacting a compound of formula (II), as defined in the '761 and '185 Patents, with 2-cyanophenol. This reaction is sometimes referred to colloquially as the "condensation" reaction.

ANSWER: [redacted]

39. The condensation reaction used to manufacture Atticus' azoxystrobin technical is catalyzed using DABCO.

ANSWER: [redacted]

40. Among other things, the use of DABCO is confirmed by the presence of one or more impurities in Atticus' end-use products that are indicative of the use of DABCO to catalyze the condensation reaction by which Atticus' azoxystrobin technical is made.

ANSWER: [redacted]

41. On information and belief, Atticus's azoxystrobin technical is manufactured using DABCO at levels between 0.1 and 40 mol %, and more specifically between 0.1 and 2 mol %.

ANSWER: [redacted]

42. On information and belief, Atticus's azoxystrobin technical is manufactured by mixing DABCO in the presence of 2-cyanophenol

ANSWER: [redacted]

43. Atticus offers for sale, and sells, its end-use ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL products in this judicial district and elsewhere in the United States.

ANSWER: Atticus admits that it sells end-use products containing azoxystrobin under the above-identified brand names in this district and elsewhere in the United States.

44. On information and belief, Atticus also offers for sale, and sells, unformulated azoxystrobin technical in this judicial district and elsewhere in the United States.

ANSWER: Admitted.

45. Atticus' azoxystrobin products, including its azoxystrobin technical and end-use ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL products, compete directly against Syngenta's azoxystrobin products.

ANSWER: Atticus admits that azoxystrobin end-use products it sells compete with other generic companies that have EPA registrations and sell azoxystrobin products in the United States. Atticus denies the remaining allegations in this Paragraph.

46. Atticus markets its end-use ACADIA 2 SC, ACADIA ESQ, and AQUILA XL products as substitutes for Syngenta's azoxystrobin products.

ANSWER: Atticus admits that its azoxystrobin end-use products include the same active ingredient as Syngenta's products that contain azoxystrobin. Atticus denies the remaining allegations of this Paragraph.

47. Atticus represents to customers that ACADIA 2 SC is "[c]ompar[able] to" Syngenta's QUADRIS® and ABOUND® products and that it includes the same active ingredients as those products. (Ex. 1 at 4; Ex. 9 at 1.)

ANSWER: Atticus admits its website states its ACADIA2 SC product "compare[s] to" Quadris® and Abound®. Atticus admits its product brochure states that its ACADIA 2 SC product "[c]ontains azoxystrobin, the active ingredient used in Quadris® and Abound®."

48. Atticus represents to customers that ACADIA ESQ is "[c]ompar[able] to" Syngenta's QUADRIS TOP® and QUADRIS TOP® SB products and that it includes the same active ingredients as those products. (Ex. 1 at 4; Ex. 10 at 1.)

ANSWER: Atticus admits that its website as of November 8, 2019 stated that Atticus's ACADIA ESQ product "compare[s] to" Quadris Top® and Quadris Top® SB. Atticus admits that its product brochure on the website as of November 8, 2019 states that Atticus's ACADIA ESQ product "[c]ontains azoxystrobin, the active ingredient used in Quadris Top® and Quadris Top® SB."

49. Atticus represents to customers that AQUILA XL is "[c]ompar[able]" Syngenta's QUILT XCEL® product and that it includes the same active ingredients as that product. (Ex. 1 at 4; Ex. 11 at 1.)

ANSWER: Atticus admits that its website states that Atticus's AQUILA XL product "compare[s] to" Quilt Xcel®. Atticus admits that its product brochure states that Atticus's AQUILA XL product "[c]ontains azoxystrobin and propiconazole, the active ingredients used in Quilt Xcel®."

50. Atticus represents to customers that ARTAVIA 2 SC is "[c]ompar[able] to" Syngenta's HERITAGE® product and that it includes the same active ingredients as that product. (Ex. 1 at 4; Ex. 12 at 1.)

ANSWER: Atticus admits that its website states that Atticus's ARTAVIA 2 SC product "compare[s] to" Heritage®. Atticus admits that its product brochure states that Atticus's ARTAVIA 2 SC product "[c]ontains azoxystrobin, the active ingredient used in Heritage®."

51. Atticus represents to customers that ARTAVIA XCEL is "[c]ompar[able] to" Syngenta's HEADWAY® product and that it includes the same active ingredients as that product. (Ex. 1 at 4; Ex. 13 at 1.)

ANSWER: Atticus admits that its website states that Atticus's ARTAVIA XCEL product "compare[s] to" Headway®. Atticus admits that its product brochure states that Atticus's ARTAVIA EXCEL product "[c]ontains azoxystrobin and propiconazole, the active ingredients used in Headway®."

52. Customers have purchased Atticus' azoxystrobin products, including ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL, instead of Syngenta's azoxystrobin products.

ANSWER: Atticus lacks information sufficient to admit or deny, and on that basis, therefore denies this allegation.

53. As a generic manufacturer, Atticus offers its azoxystrobin products, including ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL, at lower prices than Syngenta's azoxystrobin products.

ANSWER: Atticus lacks information sufficient to admit or deny, and on that basis, therefore denies this allegation.

54. Atticus' sales and offers for sale of azoxystrobin products have eroded, and continue to erode, the prices of Syngenta's azoxystrobin products.

ANSWER: Denied.

55. Syngenta's reputation is also harmed when customers choose Atticus' products, believing them to be comparable to Syngenta's azoxystrobin products.

ANSWER: Denied.

56. Atticus' activities have irreparably harmed, and continue to irreparably harm, Syngenta's business.

ANSWER: Denied.

57. On June 11, 2019, Syngenta sent a letter to Randy Canady, Founder and Chief Executive Officer of Atticus. A true and correct copy of that letter is attached as Exhibit 14.

ANSWER: Atticus admits that Syngenta sent a letter, dated June 11, 2019, addressed to Randy Canady, and that Exhibit 14 is a copy of that letter.

58. In its June 11, 2019 letter, Syngenta notified Atticus of the '761 Patent and explained that "[i]f the azoxystrobin technical used to formulate [Atticus'] azoxystrobin end-use products was made by a process that uses the DABCO catalyst during the condensation reaction 'in the presence of between 0.1 and 2 mol %,' such conduct would constitute an infringement of one or more claims of the '761 Patent." (Ex. 14.)

ANSWER: Atticus admits that Syngenta sent a letter, dated June 11, 2019, addressed to Randy Canady, and that Exhibit 14 is a copy of that letter. The content of the letter in Exhibit 14 speaks for itself, and the remainder of the allegation in Paragraph 58 does not require any response from Atticus.

59. To the extent that Atticus contended that it was using a noninfringing process, Syngenta requested (among other things) that Atticus identify under a confidentiality agreement its supplier of azoxystrobin technical and the related manufacturing specifications and explain how its process does not infringe. (Ex. 14.)

ANSWER: Atticus admits that Syngenta sent a letter, dated June 11, 2019, addressed to Randy Canady, and that Exhibit 14 is a copy of that letter. The content of the letter in Exhibit 14 speaks for itself, and the remainder of the allegation in Paragraph 59 does not require any response from Atticus.

60. On June 21, 2019, Syngenta's counsel emailed Atticus' counsel, further notifying Atticus of the '185 Patent and providing a confidentiality agreement by which the parties could exchange the information requested. A true and correct copy of the email is attached to this Complaint as Exhibit 15.

ANSWER: Atticus admits that Syngenta's counsel sent an email to Atticus's counsel and a copy of that email was included with the Complaint Exhibit 15. The content of the email in Exhibit 15 speaks for itself, and the remainder of the allegation in Paragraph 60 does not require any response from Atticus.

61. Since then, despite negotiations between the parties on the confidentiality agreement, Syngenta has been unable to obtain the information it requested from Atticus on reasonable terms.

ANSWER: Denied.

62. Atticus has been aware of Syngenta's '761 Patent since at least as early as June 11, 2019.

ANSWER: Admitted.

63. Atticus has been aware of Syngenta's '185 Patent since at least as early as June 21, 2019.

ANSWER: Admitted.

64. On information and belief, Atticus was aware of Syngenta's '761 and '185 Patents well before June 2019.

ANSWER: Atticus admits that it was aware of the '761 patent prior to June 2019. Atticus denies the remaining allegations of this Paragraph.

65. On March 27, 2015, Syngenta asserted the '761 Patent (among other patents) against certain generic manufacturers, including Willowood USA, LLC and related entities, in the U.S. District Court for the Middle District of North Carolina: *Syngenta Crop Protection, LLC v. Willowood USA, LLC et al.*, Case No. 1:15-cv-274 (Eagles, J.) ("Willowood Litigation").

ANSWER: Atticus admits that Syngenta asserted "at least claim 1" of the '761 patent against Willowood USA, LLC in the U.S. District Court for the Middle District of North Carolina. Atticus lacks sufficient information to admit or deny the remaining allegations of Paragraph 65, and on that basis, Atticus denies the remaining allegations of this Paragraph.

66. On September 13, 2017, a jury in the Willowood Litigation entered a verdict finding that the '761 Patent was valid and infringed.

ANSWER: Denied.

67. On September 18, 2017, Syngenta issued a press release providing notice that a jury in the Willowood Litigation had found the '761 Patent valid and infringed. A true and correct copy of the press release is attached to this Complaint as Exhibit 16.

ANSWER: Atticus admits that Exhibit 16 appears to be a press release concerning the Willowood Litigation. Atticus lacks sufficient information to admit or deny the

remaining allegations of Paragraph 67, and on that basis, Atticus denies any remaining allegations of this Paragraph.

68. The outcome of the Willowood Litigation was further publicized in industry publications. As an example, on September 18, 2017, AGDaily reported:

> A jury granted a major victory to Syngenta Crop Protection LLC and its customers Thursday after finding that Willowood infringed a patent relating to the manufacture of the fungicide azoxystrobin (U.S. Patent 8,124,761). The jury found that patent to be valid, and awarded Syngenta damages for Willowood's infringement. The patent remains in effect until 2029 and has counterparts around the world.

A true and correct copy of the AGDaily article is attached to this Complaint as Exhibit 17.

ANSWER: Atticus admits that Exhibit 17 appears to be a copy of the above-noted press release (AGDAILY Reporters, *Syngenta wins patent infringement lawsuit against Willowood*, September 18, 2017, https://www.agdaily.com/news/syngenta-patent-infringement-willowood/. Atticus lacks sufficient information to admit or deny the remaining allegations of Paragraph 68, and on that basis, Atticus denies any remaining allegations of this Paragraph.

69. The district court in the Willowood litigation ultimately entered judgment and issued a permanent injunction against Willowood to bar infringement of the '761 Patent.

ANSWER: Atticus lacks sufficient information to admit or deny, and on that basis, Atticus denies the allegations of this Paragraph.

70. Willowood did not appeal the judgment or the permanent injunction entered against it relating to the '761 Patent.

ANSWER: Atticus lacks sufficient information to admit or deny, and on that basis, Atticus denies the allegations of this Paragraph.

71. When Syngenta appealed certain other rulings from the Willowood Litigation to the Federal Circuit Court of Appeals, Atticus and other generic manufacturers submitted an amicus brief in support of Willowood. A true and correct copy of the certificate of interest filed by Atticus and the other generic manufacturers is attached to this Complaint as Exhibit 18.

ANSWER: Atticus admits that it joined in an amicus brief submitted by other parties during the appeal of the Willowood Litigation pertaining to copyright issues. Atticus admits that Exhibit 18 purports to be a "certificate of interest" that lists Atticus, among other companies.

72. Atticus was, thus, aware of and following the Willowood Litigation.

ANSWER: Atticus admits it was aware of the Willowood Litigation. Atticus denies the remaining allegations of Paragraph 72.

73. On information and belief, Atticus was (1) aware of the existence [of the] '761 Patent; (2) aware that a jury in the Willowood Litigation had found the '761 Patent to be valid and infringed; (3) aware that the district court entered judgment and issued a permanent injunction against Willowood, another generic manufacturer, to bar infringement of the '761 Patent; and (4) aware that the judgment and permanent injunction entered against Willowood were not appealed.

ANSWER: Atticus admits it was aware of the existence of the '761 patent, and denies the remaining allegations of Paragraph 73.

## **COUNT I**
**(Infringement of U.S. Patent No. 8,124,761)**

74. Syngenta incorporates by reference the allegations in Paragraphs 1 through 73.

ANSWER: Atticus repeats its answers with respect to the above-identified Paragraphs.

75. An actual and justiciable controversy exists between Syngenta and Atticus concerning Atticus' infringement of Syngenta's '761 Patent.

ANSWER: This Paragraph contains a conclusion to which no response is required.

76. Atticus infringes, and has infringed, at least claim 1 of the '761 Patent under at least 35 U.S.C. § 271(g) by importing into the United States, and further using, offering to sell, and selling, azoxystrobin products, including azoxystrobin technical, ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL, that were made using Syngenta's patented process.

ANSWER: Denied.

77. Syngenta has been damaged by Atticus' infringement of the '761 Patent in an amount to be determined at trial.

ANSWER: Denied.

78. Syngenta has suffered irreparable injury for which there is no adequate remedy at law, and will continue to suffer such irreparable injury, unless Atticus' infringement of the '761 Patent is enjoined by this Court.

ANSWER: Denied.

79. On information and belief, Atticus' infringement of the '761 Patent has been, and continues to be, willful.

ANSWER: Denied.

**<u>COUNT II</u>**
**(Infringement of U.S. Patent No. 8,552,185)**

80. Syngenta incorporates by reference the allegations in Paragraphs 1 through 79.

ANSWER: Atticus repeats its answers with respect to the above-identified Paragraphs.

81. An actual and justiciable controversy exists between Syngenta and Atticus concerning Atticus' infringement of Syngenta's '185 Patent.

ANSWER: This Paragraph contains a legal conclusion to which no response is required.

82. Atticus infringes, and has infringed, at least claim 1 of the '185 Patent under at least 35 U.S.C. § 271(g) by importing into the United States, and further using, offering to sell, and selling, azoxystrobin products, including azoxystrobin technical, ACADIA 2 SC, ACADIA ESQ, AQUILA XL, ARTAVIA 2 SC, and ARTAVIA XCEL, that were made using Syngenta's patented process.

ANSWER: Denied.

83. Syngenta has been damaged by Atticus' infringement of the '185 Patent in an amount to be determined at trial.

ANSWER: Denied.

84. Syngenta has suffered irreparable injury for which there is no adequate remedy at law, and will continue to suffer such irreparable injury, unless Atticus' infringement of the '185 Patent is enjoined by this Court.

ANSWER: Denied.

85. On information and belief, Atticus' infringement of the '185 Patent has been, and continues to be, willful.

ANSWER: Denied.

## JURY DEMANDED

86. Pursuant to Federal Rule of Civil Procedure 38(b), Syngenta hereby respectfully requests a jury trial on all issues and claims so triable.

ANSWER: Atticus demands a jury trial "on all issues so triable."

## PRAYER FOR RELIEF

WHEREFORE, Syngenta prays for the following judgments and relief against Atticus:

A. A judgment that Atticus has infringed the Patents-in-Suit;
B. A permanent injunction against Atticus and its affiliates, subsidiaries, assigns, employees, agents, or anyone acting in privity or concert with Atticus, from infringing the Patents- in-Suit;
C. An award of all damages adequate to compensate Syngenta for Atticus' patent infringement, such damages to be determined by a jury, and an accounting to adequately compensate Syngenta for the infringement;
D. An award of treble damages as a result of Atticus' willful infringement of the Patents-in-Suit;
E. An award of pre-judgment and post-judgment interest at the maximum rate allowed by law;
F. An award of Syngenta's costs as the prevailing party;
G. An order finding that this is an exceptional case and awarding Syngenta its reasonable attorneys' fees related to Atticus' patent infringement under 35 U.S.C. § 285 and all other applicable statutes, rules and common law; and
H. Such other further relief, in law or in equity, as this Court deems just.

ANSWER: Atticus denies that Syngenta is entitled to any relief requested in its "Prayer for Relief."

## AFFIRMATIVE DEFENSES

Without prejudice to the denials set forth in its responses to Paragraphs 1 through 85 of the Complaint, and without undertaking any of the burdens imposed by law on Syngenta, Atticus avers and asserts the following separate defenses to the Complaint. Atticus expressly reserves the right to allege additional defenses as they become known through the course of discovery or otherwise.

**FIRST DEFENSE**
(Non-infringement of the ’761 Patent)

Atticus has not and does not infringe any valid and enforceable claim of the ’761 patent literally or under the doctrine of equivalents.

**SECOND DEFENSE**
(Non-infringement of the ’185 Patent)

Atticus has not and does not infringe any valid and enforceable claim of the ’185 patent literally or under the doctrine of equivalents.

**THIRD DEFENSE**
(Invalidity of the ’761 Patent)

The ’761 patent is invalid for failing to comply with at least one of the requirements for patentability set forth in the patent laws of the United States, 35 U.S.C. § 1, et seq., including without limitation, at least under 35 U.S.C. §§ 102, 103, and/or 112. Among other things, the ’761 patent is invalid as either anticipated or rendered obvious in view of US2003/0092723 alone, or in combination with WO 92/08703.

**FOURTH DEFENSE**
(Invalidity of the ’185 Patent)

The ’185 patent is invalid for failing to comply with at least one of the requirements for patentability set forth in the patent laws of the United States, 35 U.S.C. § 1, et seq., including without limitation, at least under 35 U.S.C. §§ 102, 103, and/or 112. Among other things, the ’185 patent is invalid as either anticipated or rendered obvious in view of US2003/0092723 alone, or in combination with WO 92/08703.

**FIFTH DEFENSE**
(Limitation on Damages)

Syngenta’s claim for damages and/or costs, if any, may be limited by 35 U.S.C. §§ 287 and/or 288.

**SIXTH DEFENSE**
(No Injunctive Relief)

Syngenta is not entitled to any injunctive relief because any injury is not irreparable. If liability was established, Syngenta would have an adequate remedy at law.

**SEVENTH DEFENSE**
(Failure to State a Claim)

The Complaint fails to state a claim on which relief can be granted.

**EIGHTH DEFENSE**
(Waiver, Acquiescence, Laches and/or Estoppel)

Syngenta’s claims, including the requests for damages and other relief, are barred in whole, or in part, by the doctrines of waiver, acquiescence, laches, and/or estoppel.

## COUNTERCLAIMS

### PARTIES

1. Counterclaim Plaintiff Atticus, LLC ("Atticus") is a North Carolina limited liability company and has its principal place of business at 5000 CentreGreen Way, Suite 100 Cary, NC 27513.

2. According to Paragraph 2 of the Complaint, Syngenta Crop Protection, LLC ("Syngenta") is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 410 South Swing Road, Greensboro, North Carolina 27409-2012.

### JURISDICTION AND VENUE

3. These counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

4. This Court has jurisdiction over the subject matter of these counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

5. Venue for these counterclaims is proper within this District under at least 28 U.S.C. §§ 1391 and 1400.

6. This Court has personal jurisdiction over Syngenta at least because Syngenta has submitted itself to the personal jurisdiction of this Court by commencing

this action. Moreover, personal jurisdiction is appropriate over Syngenta because it maintains offices in this judicial district, and regularly conducts business in this district.

7. An actual controversy between Atticus and Syngenta exists because Syngenta is asserting infringement of the ’761 and ’185 patents and Atticus denies these assertions, and that controversy is of such immediacy and reality to warrant the issuance of a declaratory judgment.

8. As evidenced by Syngenta’s Complaint and Atticus’s Answer herein, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding infringement and validity of the ’761 and ’185 patents.

**COUNT ONE**
(DECLARATION OF NON-INFRINGEMENT OF THE ’761 PATENT)

9. Atticus incorporates and realleges the allegations of Paragraphs 1-8 of these counterclaims.

10. The azoxystrobin technical that Atticus imports and/or uses to manufacture Atticus’ end-use azoxystrobin products is not made using the processes set forth in any claim of Syngenta’s ’761 Patent.

11. Atticus is entitled to and respectfully requests a declaratory judgment that Atticus does not infringe and has not infringed, any valid and enforceable claim of the ’761 patent either literally or under the doctrine of equivalents.

**COUNT TWO**
(DECLARATION OF NON-INFRINGEMENT OF THE ’185 PATENT)

12. Atticus incorporates and realleges the allegations of Paragraphs 1-8 of these counterclaims.

13. The azoxystrobin technical that Atticus imports and/or uses to manufacture Atticus’ end-use azoxystrobin products is not made using the processes set forth in any claim of Syngenta’s’185 Patent.

14. Atticus is entitled to and respectfully requests a declaratory judgment that Atticus does not infringe and has not infringed, any valid and enforceable claim of the ’185 patent either literally or under the doctrine of equivalents.

**COUNT THREE**
(DECLARATION OF INVALIDITY OF THE ’761 PATENT)

15. Atticus incorporates and realleges the allegations of Paragraphs 1-8 of these counterclaims.

16. The claims of the ’761 patent are invalid for failure to comply with one or more of the statutory provisions of 35 U.S.C. §§ 101, *et seq.*, including without limitation §§ 102, 103, and/or 112.

17. More specifically and without limitation, the ’761 patent is invalid as either anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art, including, but not limited to, US2003/0092723 alone, or in combination with WO 92/08703.

18. Atticus is entitled to and respectfully requests a declaratory judgment that the claims of the ’761 patent are invalid.

**COUNT FOUR**
(DECLARATION OF INVALIDITY OF THE ’185 PATENT)

19. Atticus incorporates and realleges the allegations of Paragraphs 1-8 of these counterclaims.

20. The claims of the ’761 patent are invalid for failure to comply with one or more of the statutory provisions of 35 U.S.C. §§ 101, *et seq.*, including without limitation §§ 102, 103, and/or 112.

21. More specifically and without limitation, the ’185 patent is invalid as either anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art, including, but not limited to, US2003/0092723 alone, or in combination with WO 92/08703.

22. Atticus is entitled to and respectfully requests a declaratory judgment that the claims of the ’761 patent are invalid.

**COUNT FIVE**
(ATTORNEYS’ FEES AND COSTS)

23. Atticus incorporates and realleges the allegations of Paragraphs 1-28 of these counterclaims.

24. Syngenta's allegations of infringement were made without information as to the process used to make the azoxystrobin imported by Atticus. Had Syngenta reasonably negotiated to obtain access to that information under an appropriate confidentiality agreement, it would have determined that its assertions of infringement in its Complaint were and are unreasonable, and unfounded.

25. This case is an exceptional case pursuant to 35 U.S.C. § 285, and therefore Atticus is entitled to an award of attorneys' fees and costs.

**WHEREFORE**, Defendant and Counterclaim Plaintiff Atticus, having answered the Complaint, and having counterclaimed as set forth herein, respectfully prays for the following relief:

a. Dismissal of Syngenta's Complaint with prejudice and entry of judgment in favor of Atticus with respect to all claims alleged in the Complaint;

b. Judgment declaring that the claims of the '761 and '185 patents have not been infringed literally or under the doctrine of equivalents by Atticus;

c. Judgment declaring that the claims of the '761 and '185 patents are invalid;

d. Judgment that this is an exceptional case pursuant to 35 U.S.C. § 285, and an award to Atticus of its costs and reasonable attorneys' fees, together with interest, including prejudgment interest thereon;

e. Denial of any injunctive relief sought by Syngenta;

f. That Syngenta not be awarded any damages, costs, expenses, attorneys' fees or other relief;

g. A trial by jury on all issues so triable; and

h. Such other and further relief as may be deemed just and appropriate.

This the 21st day of April, 2020.

/s/ Robert J. Scheffel
Robert J. Scheffel
rscheffel@dowdscheffel.com
Matthew J. Dowd
mdowd@dowdscheffel.com
DOWD SCHEFFEL PLLC
1717 Pennsylvania Ave, NW
Suite 1025
Washington, D.C. 20006
Telephone: (202) 559-9175

/s/ Robert J. Morris
Robert J. Morris
N.C. State Bar No. 15981
jmorris@smithlaw.com
SMITH ANDERSON BLOUNT DORSETT
MITCHELL & JERNIGAN, LLP
2300 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, North Carolina 27601
Telephone: (919) 821-1220
Facsimile: (919) 821-6800

*Attorneys for Defendant*
*Atticus, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 25th day of September, 2020, the foregoing Atticus's Answer and Counterclaims (Redacted) was filed with the Clerk of Court using the CM/ECF system, which will send notification to the attorneys of record for Syngenta Crop Protection, LLC.

/s/ Robert J. Morris
Robert J. Morris
N.C. State Bar No. 15981
jmorris@smithlaw.com
SMITH ANDERSON BLOUNT DORSETT
MITCHELL & JERNIGAN, LLP
2300 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, North Carolina 27601
Telephone: (919) 821-1220
Facsimile: (919) 821-6800