IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-509-D

| | | |
|---|---|---|
| SYNGENTA CROP PROTECTION, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** |
| ATTICUS, LLC, | ) ) ) | |
| Defendant. | ) ) | |

On November 12, 2019, Syngenta Crop Protection, LLC ("Syngenta" or "plaintiff") filed suit against Atticus, LLC ("Atticus" or "defendant") alleging patent infringement [D.E. 1]. On June 29, 2021, Atticus filed an amended answer and counterclaims [D.E. 272]. Atticus raised counterclaims alleging noninfringement and the invalidity of Syngenta's patents, violations of the Sherman Act, 15 U.S.C. §§ 1, et seq., violations of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75-1.1, et seq., defamation, and a claim for attorney's fees. See [D.E. 272] ¶¶ 256–96. On July 13, 2021, Syngenta moved to dismiss Atticus's antitrust, defamation, and UDTPA claims under Federal Rule of Civil Procedure 12(b)(6) [D.E. 294] and filed a memorandum in support [D.E. 295]. On July 20, 2021, Syngenta moved to stay discovery concerning Atticus's counterclaims while Syngenta's motion to dismiss was pending [D.E. 301]. On August 3, 2021, Atticus responded in opposition to Syngenta' motion to dismiss [D.E. 319] and in opposition to Syngenta's motion to stay [D.E. 323]. On August 17, 2021, Syngenta replied to Atticus's response in opposition to Syngenta's motion to dismiss [D.E. 334]. As explained below, the court grants Syngenta's motion to dismiss and denies as moot Syngenta's motion to stay.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a party's factual allegations must "nudge[ ] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records.

2

See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Syngenta's motion to dismiss requires the court to consider North Carolina state law defamation and UDTPA claims. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[1] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

A.

Syngenta argues that Atticus fails to state a plausible antitrust claim under section 2 of the

---

[1] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013).

3

Sherman Act. See [D.E. 295] 15–30. Atticus disagrees. See [D.E. 319] 13–30. Atticus alleges Syngenta's lawsuit against it is a sham and an abuse of process that amounts to monopolization or attempted monopolization under section 2 of the Sherman Act. As explained below, the Noerr-Pennington[2] doctrine bars Atticus's antitrust claim.

A patentee can be subject to antitrust liability for the anticompetitive effects of a lawsuit. See Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1068 (Fed. Cir. 1998); LendingTree, LLC v. Zillow, Inc., No. 3:10-CV-439-FDW-DCK, 2011 WL 13222698, at *2 (W.D.N.C. Nov. 4, 2011) (unpublished).[3] However, under the Noerr-Pennington doctrine, patentees, like everyone else, have a "First Amendment right to petition the government for redress without fear of antitrust liability." Balt. Scrap Corp. v. David J. Joseph Co., 237 F.3d 394, 398 (4th Cir. 2001); see Indus. Models, Inc. v. SNF, Inc., 716 F. App'x 949, 955–56 (Fed. Cir. 2017) (unpublished); Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n, 776 F.3d 1343, 1349–50 (Fed. Cir. 2014); ERBE Elektromedizin GmbH v. Canady Tech. LLC, 629 F.3d 1278, 1291–93 (Fed. Cir. 2010); FilmTec Corp. v. Hydranautics, 67 F.3d 931, 937 (Fed. Cir. 1995); see also Waugh Chapel S., LLC v. United Food & Com. Workers Union Local 27, 728 F.3d 354, 362–64 (4th Cir. 2013); IGEN Int'l, Inc. v. Roche Diagnostics GmbH, 335 F.3d 303, 310 (4th Cir. 2003).

To strip a patentee of its immunity from antitrust liability, a party must show either that the patentee obtained the patent through knowing and willful fraud, see Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 177–78 (1965), or that the lawsuit is a sham. See

---

[2] See United Mine Workers of Am. v. Pennington, 381 U.S. 657, 669–71 (1965); E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 135–45 (1961).

[3] "[W]hether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws is to be decided as a question of Federal Circuit law." Nobelpharma AB, 141 F.3d at 1068.

4

Nobelpharma AB, 141 F.3d at 1068; C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1368–69 (Fed. Cir. 1998); Lending Tree, LLC, 2011 WL 13222698, at *2. As is the case here, "an antitrust claim premised on stripping a patentee of its immunity from the antitrust laws is typically raised as a counterclaim by a defendant in a patent infringement suit." Nobelpharma AB, 141 F.3d at 1067. To state a claim for treble damages under section 4 of the Clayton Act, a counterclaiming defendant also must plausibly allege all the other elements of a substantive antitrust claim. See Dippin' Dots, Inc. v. Mosey, 476 F.3d 1337, 1346 (Fed. Cir. 2007); Lending Tree, LLC, 2011 WL 13222698, at *2. Atticus alleges only that Syngenta's lawsuit against it is a sham, not that Syngenta obtained its patents through knowing and willful fraud.

Patentees lose their Noerr-Pennington immunity when they engage in sham litigation. See, e.g., Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 555–56 (2014); BE & K Constr. Co. v. N.L.R.B., 536 U.S. 516, 525–26 (2002); Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60–61 (1993) [hereinafter PREI]; Indus. Models, Inc., 716 F. App'x at 956; Content Extraction, 776 F.3d at 1349–50; ERBE Elektromedizin, 629 F.3d at 1291–93; FilmTec Corp., 67 F.3d at 937. Litigation is a sham if it satisfies a two-part definition comprising an objective component and a subjective component. See BE & K Contr. Co., 536 U.S. at 526 ("For a suit to violate the antitrust laws, then, it must be a sham both objectively and subjectively."). First, the "lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." PREI, 508 U.S. at 60; see Octane Fitness, 572 U.S. at 556; BE & K Constr. Co., 536 U.S. at 526; Content Extraction, 776 F.3d at 1350. A lawsuit is not objectively baseless if its proponent had probable cause to bring suit. See PREI, 508 U.S. at 62. Second, the "litigant's subjective motivation" for the lawsuit must be to directly interfere with a competitor's business relationships. PREI, 508 U.S. at 60; see Octane Fitness, 572 U.S. at

5

556; BE & K Constr. Co., 536 U.S. at 526; Content Extraction, 776 F.3d at 1350. If a court determines that a lawsuit is not objectively baseless, the court need not consider the litigant's subjective motivations. See PREI, 508 U.S. at 60–61.

The Noerr-Pennington doctrine is an affirmative defense, and a court generally may not "reach the merits of an affirmative defense unless all facts necessary to the affirmative defense clearly appear on the face of the complaint." Waugh Chapel S., 728 F.3d at 359–60 (cleaned up); see Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); Navient Sols., LLC v. Law Offices of Jeffrey Lohman, No. 1:19-cv-461 (LMB/TCB), 2020 WL 1867939, at *4 (E.D. Va. Apr. 14, 2020) (unpublished).[4] Moreover, "[c]ourts have routinely declined to address the Noerr-Pennington doctrine at the motion to dismiss stage, particularly where the sham litigation exception may be involved." Navient Sols., 2020 WL 1867939, at *4 (collecting cases); see Klein v. Altria Grp., Inc., 525 F. Supp. 3d 638, 662 (E.D. Va. 2021). The Federal Circuit, however, has resolved Noerr-Pennington immunity issues under the Rule 12(b)(6) standard. See, e.g., Content Extraction, 776 F.3d at 1346, 1349–50. And the court holds that the facts alleged in Atticus's amended counterclaims—which specifically pleaded an antitrust claim and the sham litigation exception to the Noerr-Pennington doctrine—contain facts sufficient to resolve whether the Noerr-Pennington doctrine applies.

Taking the factual allegations in Atticus's counterclaims and all reasonable inferences drawn therefrom as true, Atticus has not plausibly alleged that Syngenta's lawsuit is objectively baseless—i.e., that no reasonable litigant could expect success on the merits. Syngenta has obtained

---

[4] Cf. CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co., 916 F.3d 1350, 1357 (Fed. Cir. 2019) ("We review a district court's dismissal for failure to state a claim under the regional circuit's law."); Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1347 (Fed. Cir. 2016) (same).

6

a favorable jury verdict concerning one of the patents at issue in this case, thus indicating Syngenta has probable cause to believe its patents are valid and enforceable. See Syngenta Crop Protection LLC v. Willowood, LLC, 944 F.3d 1344 (Fed. Cir. 2019); see also [D.E. 272] ¶¶ 65–73, 161.[5] Tellingly, the expert testimony that Atticus alleges shows Syngenta's claims concerning Atticus's supposed infringement of the '761 patent is objectively baseless is the same expert testimony Atticus alleges Syngenta relied on, with success, in the Willowood litigation. See [D.E. 272] ¶¶ 189–92.

Syngenta tested one of Atticus's products and discovered reason to suspect that the azoxystrobin in Atticus's product might have been produced following Syngenta's patented process. See id. ¶ 185. Syngenta also reviewed publicly available information about Atticus's products and concluded that information supported its infringement claims against multiple azoxystrobin products that Atticus sells. See [D.E. 1-4 through 1-9, 1-13 through 1-16]. Finally, the court has reviewed Syngenta's complaint and determined Syngenta plausibly alleged its patent infringement claims. See [D.E. 25]; see, e.g., Ervin Equip. Inc. v. Wabash Nat'l Corp., No. 4:15-cv-104, 2017 WL 416304, at *3 (N.D. Ind. Jan. 31, 2017) (unpublished) (collecting cases); Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc., 948 F. Supp. 2d 538, 557 (D. Md. 2013); Giles v. Phelan, Hallinan & Schmieg, L.L.P., C/A No. 11-6239 (JBS/KMW), 2013 WL 2444036, at *7 (D.N.J. June 4, 2013) (unpublished); Krasnyi Oktyabr, Inc. v. Trilini Imps., 578 F. Supp. 2d 455, 475 (E.D.N.Y. 2008);

---

[5] The court expresses no opinion about whether the patents at isue in this case are, in fact, valid and enforceable or whether Atticus infringed them. Moreover, the jury in Willowood only determined that Willowood did not prove noninfringement. It did not conclude that Syngenta had affirmatively proved infringement and its patents' validity. See Willowood, 944 F.3d at 1354 (discussing the jury's findings concerning the '761 patent). Nonetheless, Syngenta's success in that lawsuit, combined with other facts alleged, provides probable cause to believe Syngenta could reasonably expect success on the merits in this case.

7

Arnett Physician Grp., P.C. v. Greater LaFayette Health Servs., Inc., 382 F. Supp. 2d 1092, 1097 (N.D. Ind. 2005).

Syngenta's lawsuit is not objectively baseless. A reasonable litigant would have an objective basis to expect success on the merits. Cf. Tyco Healthcare Grp. LP v. Mut. Pharm. Co., Inc., 762 F.3d 1338, 1345–46 (Fed. Cir. 2014) ("Given the presumption of patent validity and the burden on the patent challenger to prove invalidity by clear and convincing evidence, it will be a rare case in which a patentee's assertion of its patent in the face of a claim of invalidity will be so unreasonable as to support a claim that the patentee has engaged in sham litigation."); In re Loestrin 24 Fe Antitrust Litig., 261 F. Supp. 3d 307, 348 (D.R.I. 2017) (same); see also [D.E. 272] ¶¶ 262–69 (alleging the invalidity of Syngenta's patents). Because Syngenta's lawsuit is not objectively baseless, the court need not consider Syngenta's subjective motivations for suing Atticus. See PREI, 508 U.S. at 60–61. Accordingly, the sham litigation exception does not apply, and the Noerr-Pennington doctrine bars Atticus's antitrust claim.

In opposition, Atticus alleges that with more due diligence, Syngenta could have determined that Atticus purchased the azoxystrobin Syngenta tested from a supplier authorized to sell azoxystrobin made using Syngenta's patented process and that the azoxystrobin Syngenta tested may have come from a batch Syngenta itself manufactured. See [D.E. 272] ¶¶ 80–100, 205–21. Taking these allegations as true, Atticus's allegations amount to a defense to liability for patent infringement. Ultimately, Atticus may prevail on that theory. However, Atticus's allegations concerning due diligence do not render Syngenta's lawsuit objectively baseless. A lawsuit is not objectively baseless merely because reasons exist to think the plaintiff will lose. See, e.g., BE & K Constr. Co., 536 U.S. at 532 (stating the Court's cases "protect[] petitioning whenever it is genuine, not simply when it triumphs" and that "even unsuccessful but reasonably based suits advance some

8

First Amendment interests"); C.R. Bard, 157 F.3d at 1369 ("[S]ham litigation requires more than a failed legal theory."); Krasni Oktyabr, Inc., 578 F. Supp. 2d at 475 ("[A]lthough plaintiff's suit has proven unsuccessful, plaintiff's claims had enough merit to survive defendants' motion to dismiss. Even though plaintiff's allegations have failed to survive summary judgment, these allegations cannot be viewed as objectively baseless or blatantly false based on the evidence presented." (citation omitted)).

Atticus also alleges that Syngenta did not work with Atticus in good faith to resolve the infringement issue before Syngenta filed its lawsuit. See [D.E. 272] ¶¶ 162–78. Atticus's allegations show that the parties were unable to agree on the terms of a confidentiality agreement that would allow Atticus and Syngenta to share certain data to determine whether Atticus infringed Syngenta's patents. See id. Even assuming Syngenta negotiated in bad faith, that allegation does not undermine Syngenta's sufficient factual basis for the patent infringement suit.

Based on the Willowood litigation, Syngenta's test of a sample of Atticus's product, and Syngenta's review of publicly available information about Atticus's azoxystrobin products, Syngenta had probable cause to sue Atticus. This court came to a similar conclusion when it held that Syngenta stated plausible patent infringement claims under Rule 12(b)(6). See [D.E. 25]. Accordingly, Syngenta's lawsuit is not objectively baseless, and the court need not consider Syngenta's subjective motivations for filing the lawsuit. See PREI, 508 U.S. at 60–61. Thus, the Noerr-Pennington doctrine bars Atticus's antitrust claim, and the court dismisses it.

B.

Syngenta moves to dismiss Atticus's defamation claim. See [D.E. 295] 31–33. Atticus argues it plausibly alleged defamation based on statements in a press release Syngenta issued the day it sued Atticus. See [D.E. 272] ¶¶ 278–85. Atticus bases its claim on two statements in Syngenta's

9

press release. First, the press release stated: "The complaint, filed in the U.S. District Court for the Eastern District of North Carolina, alleges, among other things, that Atticus' Acadia 2 SC, Acadia ESQ, Aquila XL, Artavia 2 SC and Artavia Xcel products each infringe certain Syngenta patents relating to the manufacture of azoxystrobin fungicide." Syngenta US, Syngenta Files Infringement Suit Against Atticus (Nov. 12, 2019) [hereinafter Syngenta Press Release], https://www.syngenta-us.com/newsroom/news_release_detail.aspx?id=212352 (last visited Mar. 21, 2022); [D.E. 272] ¶ 224.[6] Second, the press release stated: "Atticus' infringement enables it to unfairly compete in the crop protection market and benefit from significant product development investments made by Syngenta, the original developer of azoxystrobin." Syngenta Press Release; [D.E. 272] ¶ 225. Atticus alleges these statements are defamatory per se and made with wanton disregard for the actual truth. See id. ¶¶ 281, 283.[7]

To establish a defamation claim under North Carolina law, a "plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." Griffin v. Holden, 180 N.C. App. 129, 133, 636 S.E.2d 298, 302 (2006) (quotation omitted); see Hendrix v. Town of W.

---

[6] Atticus only alleges that the second half of this statement is defamatory and thus only quotes the second half of this statement in its counterclaims. The court declines, however, to evaluate one half of a sentence divorced entirely from the other half and from its context in the press release. Moreover, Atticus cites the website for the press release in its counterclaims. See [D.E. 272] ¶ 223.

[7] The statute of limitations likely bars Atticus's defamation claim. Under North Carolina law, defamation claims are subject to a one-year statute of limitations. See N.C. Gen. Stat. § 1-54(3); Philips v. Pitt Cnty. Mem'l Hosp., 222 N.C. App. 511, 526–27, 731 S.E.2d 462, 472–73 (2012). Syngenta published its press release on November 12, 2019. See [D.E. 272] ¶ 223. Atticus did not raise its defamation counterclaim until June 29, 2021. See [D.E. 272] 86. Syngenta, however, failed to raise the statute of limitations in its brief supporting its motion to dismiss, and thus the court considers the merits of Atticus's defamation claim. See Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656–57 (4th Cir. 2006) (stating "the general rule that a statute of limitations defense should not be raised and considered sua sponte").

10

Jefferson, 273 N.C. App. 27, 32, 847 S.E.2d 903, 907 (2020); Boyce & Isley, PLLC v. Cooper, 211 N.C. App. 469, 478, 710 S.E.2d 309, 317 (2011); Craven v. Cope, 188 N.C. App. 814, 816, 656 S.E.2d 729, 732 (2008); Smith-Price v. Charter Behav. Health Sys., 164 N.C. App. 349, 356, 595 S.E.2d 778, 783 (2004); see also Swinney v. Frontier Airlines, Inc., No. 1:19-cv-808, 2020 WL 3868831, at *5 (M.D.N.C. July 9, 2020) (unpublished); Moore v. Cox, 341 F. Supp. 2d 570, 574 (M.D.N.C. 2004). In considering a motion to dismiss, a court must "credit the plaintiff's allegation of the actual falsity of a statement." Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993) (citation omitted); see Gilmore v. Jones, 370 F. Supp. 3d 630, 671 (W.D. Va. 2019). A plaintiff, however, cannot merely allege falsity in "vague, conclusory terms." Chapin, 993 F.2d at 1092; cf. Mayfield v. NASCAR, Inc., 674 F.3d 369, 377 (4th Cir. 2012) (stating that "the usual standards of notice pleading apply in defamation cases"); Hatfill v. N.Y. Times Co., 416 F.3d 320, 329 (4th Cir. 2005); Jolly v. Acad. Collection Serv., Inc., 400 F. Supp. 2d 851, 861 (M.D.N.C. 2005).

Defamation can be either libel or slander. See, e.g., Craven, 188 N.C. App. at 816, 656 S.E.2d at 732; Tallent v. Blake, 57 N.C. App. 249, 251, 291 S.E.2d 336, 338 (1982); cf. Renwick v. News and Observer Publ'g Co., 310 N.C. 312, 323–24, 312 S.E.2d 405, 412–13 (1984). Generally, libel is written and slander is oral. See Aycock v. Padgett, 134 N.C. App. 164, 165, 516 S.E.2d 907, 909 (1999); Tallent, 57 N.C. at 251, 291 S.E.2d at 338; cf. Bell v. Simmons, 247 N.C. 488, 494, 101 S.E.2d 383, 388 (1958). North Carolina recognizes three classes of libel—libel per se, libel per quod, and libel by "publications susceptible of two interpretations one of which is defamatory and the other not." Renwick, 310 N.C. at 316, 312 S.E.2d at 408 (quotation omitted); see Arnold v. Sharpe, 296 N.C. 533, 537, 251 S.E.2d 452, 455 (1979); Flake v. Greensboro News

11

Co., 212 N.C. 780, 785, 195 S.E. 55, 59 (1938); Clark v. Clark, 867 S.E.2d 743, 754 (N.C. Ct. App. 2021); see also Swinney, 2020 WL 3868831, at *5.

Atticus alleges the statements in Syngenta's press release are libel per se. Libel per se is a false written statement communicated to a third party that "tends to impeach a person in that person's trade or profession [or] otherwise tends to subject one to ridicule, contempt or disgrace." Renwick, 310 N.C. at 317, 312 S.E.2d at 408–09; see Flake, 212 N.C. at 782, 195 S.E. at 59–60; Cherry v. United Parcel Serv., Inc., No. 5:07-CV-403-D, 2009 WL 8641019, at *9 (E.D.N.C. Sept. 28, 2009) (unpublished). In evaluating whether a publication constitutes libel per se, a court must analyze whether the publication is defamatory when "stripped of all insinuations, innuendo, colloquium, and explanatory circumstances." Griffin, 180 N.C. App. at 134, 636 S.E.2d at 303; see, e.g., Nucor Corp. v. Prudential Equity Grp., LLC, 189 N.C. App. 731, 736, 659 S.E.2d 483, 487 (2008). Whether a statement is defamatory per se is a question of law. See, e.g., Ellis v. N. Star Co., 326 N.C. 219, 224, 388 S.E.2d 127, 130 (1990). When a plaintiff alleges that statements are defamatory per se, the statements "must be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided." Boyce & Isley, 153 N.C. App. at 30–31, 568 S.E.2d at 898–99; see, e.g., Renwick, 310 N.C. at 317–18, 312 S.E.2d at 409; Oates v. Wachovia Bank & Tr. Co., 205 N.C. 14, 16, 169 S.E.2d 869, 871 (1933). "When examining an allegedly defamatory statement, the court must view the words within their full context and interpret them as ordinary people would understand them." Boyce & Isley, 153 N.C. App. at 31, 568 S.E.2d at 899 (quotation omitted); see Renwick, 310 N.C. at 318, 312 S.E.2d at 409. However, "a statement must state or imply a defamatory fact to be actionable." Daniels v. Metro Magazine Holding Co., L.L.C., 179 N.C. App. 533, 539, 634 S.E.2d 586, 590 (2006); see Craven, 188 N.C. App. at 817, 656

12

S.E.2d at 732. Thus, a statement that is rhetorical hyperbole or "a pure expression of opinion is protected because it fails to assert an actual fact." Daniels, 179 N.C. App. at 539, 634 S.E.2d at 590; see Craven, 188 N.C. App. at 817, 656 S.E.2d at 732.

Atticus does not plausibly allege a defamation claim. Atticus asserts that Syngenta's statements in its press release are false. See [D.E. 272] ¶¶ 224–26. As for the first statement, that assertion is a bare conclusion the court need not accept as true. The first allegedly defamatory statement merely summarizes the claims Syngenta alleged in its complaint against Atticus. See Compl. [D.E. 1]. Syngenta's summary truthfully and accurately describes the claims in its complaint. See id. Thus, the first statement Atticus cites from Syngenta's press release cannot support an actionable defamation claim.

As for the second statement, the court assumes the statement's falsity for the purpose of resolving Syngenta's motion to dismiss. See Chapin, 993 F.2d at 1092; Gilmore, 370 F. Supp. 3d at 671. Assuming without deciding that Syngenta's statement is false[8] and it injured Atticus's business reputation, the statement is mere opinion. Again, Syngenta wrote in the press release: "Atticus' infringement enables it to unfairly compete in the crop protection market and benefit from significant product development investments made by Syngenta, the original developer of azoxystrobin." Syngenta Press Release. Syngenta made the statement in the context of its public announcement of this lawsuit. The sentences immediately before and after the alleged defamatory statement factually summarize Syngenta's complaint. See id. Syngenta's assertion that Atticus competes unfairly is premised on Syngenta's infringement claims in this case. Indeed, the press release contains nothing, except the announcement of the lawsuit, to support the assertion that

---

[8] The statement's truth or falsity rests on whether Atticus did, in fact, infringe Syngenta's patents, and that question is at the heart of this lawsuit.

13

Atticus competes unfairly. See id. In context, Syngenta's allegedly defamatory statement is an opinion that Syngenta believes Atticus competes unfairly by infringing Syngenta's patents. Syngenta sued Atticus based on that opinion and belief. Syngenta's statement cannot reasonably be interpreted as stating actual facts about Atticus given that the purpose of suit (which is the subject of the press release) is to litigate the claims in the complaint. Because the statement is a protected opinion, Atticus has not plausibly alleged a defamation claim. Thus, the court dismisses the claim.

C.

Syngenta moves to dismiss Atticus's unfair and deceptive trade practices claim. See [D.E. 295] 31. Atticus's unfair and deceptive trade practices claim is based on its sham litigation claim, its defamation claim, and allegations that Syngenta's alleged conduct is generally unfair and deceptive. See [D.E. 319] 10–13.

To state an unfair and deceptive trade practices claim, a plaintiff must plausibly allege: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007) (quotation omitted); see SciGrip v. Osae, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. A practice is deceptive if it has the capacity or tendency to deceive." Walker, 362 N.C. at 72, 653 S.E.2d at 399 (cleaned up). "[I]t is not necessary for the plaintiff to show fraud, bad faith, deliberate or knowing acts of deception, or actual deception, but plaintiff must show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." Gress v. Rowboat Co., Inc., 190 N.C. App. 773, 776, 661 S.E.2d 278, 281 (2008) (alteration and quotation omitted); see Overstreet v. Brookland, Inc., 52 N.C. App. 444, 452–53, 279 S.E.2d 1, 7 (1981).

14

As for Atticus's unfair and deceptive trade practices claim based on sham litigation, see [D.E. 319] 11–12, "[t]he institution of a lawsuit may be the basis for an unfair trade practices claim if the lawsuit is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." United States v. Ward, 618 F. Supp. 884, 907 (E.D.N.C. 1985); see RE/MAX LLC v. M.L. Jones & Assocs., Ltd., No. 5:12-CV-768-D, 2013 WL 4647517, at *4 (E.D.N.C. Aug. 29, 2013) (unpublished). The Noerr-Pennington doctrine provides the proper standard for evaluating allegations that the pursuit of litigation constitutes a business tort. See IGEN Int'l, Inc., 335 F.3d at 310. As stated, the Noerr-Pennington doctrine bars Atticus's antitrust claim. Similarly, it bars Atticus's unfair and deceptive trade practices claim to the extent the claim is based on Atticus's sham litigation claim. See, e.g., RE/MAX, 2013 WL 4647517, at *4 (holding that because the lawsuit was not objectively baseless, "the lawsuit [was] not an unfair act prohibited by the UDTPA"); Gupton v. Son-Lan Dev. Co., 205 N.C. App. 133, 143–44, 695 S.E.2d 763, 771 (2010) ("As defendants had probable cause to bring" their lawsuit, "their actions were not unfair.").

As for Atticus's allegations that the statements in Syngenta's press release are misleading and deceptive, see [D.E. 319] 12, 30–33, Atticus fails to state a claim. Plausibly alleging a defamation per se claim may suffice to state an unfair and deceptive trade practices claim. See, e.g., Boyce & Isley, PLLC, 153 N.C. App. at 35–36, 568 S.E.2d at 902. However, Atticus did not plausibly allege a defamation claim. Nonetheless, the standard for an unfair and deceptive trade practices claim is lower than that for defamation—i.e., the offending statements or conduct need only have the tendency or capacity to mislead or deceive. See Gress, 190 N.C. App. at 776, 661 S.E.2d at 281. As for the first allegedly defamatory statement, that statement accurately summarizes the claims Syngenta alleged in this lawsuit. It is not misleading. As for the second allegedly defamatory

15

statement, it is an opinion made in the context of a press release about this litigation and Syngenta's motivations for suing Atticus. Given this context, it also is not likely to deceive, given a reasonable reader would construe it in the context of Syngenta's adversarial position as a plaintiff. To the extent Atticus relies on other allegations, Atticus has not pleaded those allegations with sufficient particularity under Federal Rule of Civil Procedure 9(b). See, e.g., Sasso v. Tesla, Inc., No. 5:21-CV-24-D, 2022 WL 363850, at *10 (E.D.N.C. Feb. 7, 2022); Cross v. Ciox Health, LLC, 438 F. Supp. 3d 572, 584–86 (E.D.N.C. 2020); Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 728–32 (M.D.N.C. 2015); see also Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 553 (4th Cir. 2019); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783–84 & n.5 (4th Cir. 1999).[9]

Finally, taking Atticus's allegations as true, Atticus's allegations concerning it and Syngenta's pre-suit negotiations do not plausibly state an unfair and deceptive trade practices claim. See [D.E. 319] 11. Although Atticus and Syngenta were unable to agree on the terms of a confidentiality agreement in order to continue negotiations, that failure alone is not sufficiently "immoral, unethical, oppressive, unscrupulous, or substantially injurious" to state an unfair and deceptive trade practices claim. Walker, 362 N.C. at 72, 653 S.E.2d at 399. Accordingly, the court dismisses Atticus's unfair and deceptive trade practices claim.

---

[9] In opposition, Atticus cites the deposition testimony of a witness from a third-party company suggesting that, based on Syngenta's lawsuit, he thought Atticus may have acted improperly. See [D.E. 319] 13. Atticus did not allege or incorporate the testimony in Atticus's counterclaims, and the court does not consider that testimony in resolving Syngenta's motion to dismiss. But even if the court were to consider it, the testimony concerns the witness's opinion of Atticus based on the lawsuit, not the statements in the press release. The press release is not even mentioned in the portion of the deposition Atticus submitted as an exhibit alongside its opposition brief. See [D.E. 321-1]. Thus, even if the court considered the testimony, the testimony would not save Atticus's claim from dismissal.

16

II.

In sum, the court GRANTS plaintiff's motion to dismiss [D.E. 294], DISMISSES defendant's antitrust, defamation, and unfair and deceptive trade practices counterclaims, and DENIES as moot plaintiff's motion to stay [D.E. 301]. Nothing in this order affects defendant's remaining counterclaims for declaratory relief and attorney's fees.

SO ORDERED. This 21 day of March, 2022.

JAMES C. DEVER III
United States District Judge